Filed 6/3/26  Conservatorship of John M. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Conservatorship of the Person of JOHN M. | |
| PUBLIC GUARDIAN OF SAN FRANCISCO COUNTY,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>JOHN M.,<br><br>        Objector and Appellant. | A174524<br><br>(San Francisco City and County Super. Ct. No. PMH-25-025053) |

Following a September 2025 bench trial, the trial court found objector and appellant John M. to be gravely disabled under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.).  The court appointed the San Francisco Department of Disability and Aging Services, Office of the Public Conservator (public guardian) as John M.'s conservator.  On appeal, John M.'s sole claim is that reversal is required because the record does not show he knowingly and voluntarily waived his right to a jury trial.  We disagree and affirm.

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

In April 2025, the public guardian petitioned to be appointed conservator over John M., who was diagnosed with schizophrenia and was unhoused but currently in the hospital. In an accompanying affidavit, a doctor averred that John M. had visited the emergency room over 100 times throughout the past two years, was in a wheelchair, and struggled to meet his own medical and nutritional needs. The doctor also averred that John M. did not have the capacity to consent to psychotropic medication and other treatment for his mental disorder. The trial court appointed a temporary conservator pending a hearing on the petition.

After several continuances, the matter came on for hearing on September 4, 2025. John M. was present with counsel. The trial court told John M. that he had the right to a jury trial on whether he was gravely disabled. The court explained that a jury trial would involve "call[ing] in several members of the community and ultimately [12] members would have to agree unanimously beyond a reasonable doubt that [he was] gravely disabled." Alternatively, the court said, John M. could elect "a judge trial[,] where the judge alone, in this case me, would make that decision. So, if you waive a right to a jury trial, you're agreeing to have me alone decide the issue."

The following discussion between the trial court, John M., and his counsel then occurred:

"THE COURT: Would you like to schedule a case for jury trial or proceed today with a judge trial?

"[JOHN M.]: I believe if I have a good chance of getting out, getting off conservatorship, I'm fine with you. But if I don't have a good chance, I'm gonna

need a jury trial.

"[COUNSEL]: So, Mr. M[.], you have a choice. You can either choose to go forward today with a bench trial with Judge Murphy or we can pick a different date for a jury trial. It is your decision.

"[JOHN M.]: I would like to show you when I went on. I guess we'll try a judge trial. I can walk now. I couldn't walk before. Someone played a joke on me.

"[COUNSEL]: The question is, Mr. M[.], do you want to go forward with a bench trial with Judge Murphy today or do you want to go forward at a future date with a jury trial?

"[JOHN M.]: It's my best interest.

"[COUNSEL]: You have a choice. Judge Murphy is here.

"[JOHN M.]: If I lose, then I go to a jury trial?

"[COUNSEL]: You can do a writ later.

"[JOHN M.]: Okay. Yeah. We'll try Judge Murphy.

"THE COURT: All right. So you waive your right to a jury trial? [¶] Yes? [¶] You have to say [it] out loud.

"[JOHN M.]: Yes, sir."

The trial court asked John M. whether he wanted a private or public hearing, and he responded, "We'll remain private. Thank you." The court then informed him that if he was "not happy with the outcome of today's proceeding," he "[did] have the right to appeal."

Two witnesses testified at the ensuing bench trial, a doctor who met with John M. once over Zoom and reviewed his medical records, and John M.

3

himself.  The doctor testified that John M. had "very limited" insight into his schizophrenia, did not understand that he needed medication, and had no realistic plans to provide for his basic needs.  John M. testified that he previously worked as a card dealer in Las Vegas and planned to do so again, was willing to keep taking his medication, and no longer used a wheelchair.

The trial court found that John M. was gravely disabled and lacked capacity to provide informed consent to psychotropic medications.  It therefore appointed the public guardian as John M.'s conservator and ordered that he could be involuntarily medicated, although he retained the right to consent to or refuse medical treatment unrelated to his disability.

## II.
### DISCUSSION

A proposed conservatee has "the right to demand a court or jury trial on the issue of whether the person is gravely disabled."  (Welf. & Inst. Code, § 5350, subd. (d)(1).)  The trial court is required to "inform the proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury."  (Prob. Code, § 1828, subd. (a)(6); see Welf. & Inst. Code, § 5350 [incorporating procedures from Probate Code].)

To be valid, a proposed conservatee's "waiver of the statutory right to a jury trial . . . must be knowingly and voluntarily made."  (*K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 143.)  That is, the person's waiver must be " ' " ' " 'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,' " ' as well as voluntary ' " 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.' " ' " ' " (*Conservatorship of Joanne R.* (2021) 72 Cal.App.5th 1009, 1017, quoting *People v. Sivongxxay* (2017) 3 Cal.5th 151, 166.)

4

We review a trial court's implied finding that a jury waiver was knowing and voluntary for substantial evidence. (*Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 918.) In doing so, we consider the totality of the circumstances, including the thoroughness of the court's explanation of the right to a jury trial. (*Conservatorship of Joanne R.*, *supra*, 72 Cal.App.5th at pp. 1017–1018.) The record must "affirmatively demonstrate[]" that a jury waiver was validly given. (*People v. Daniels* (2017) 3 Cal.5th 961, 991.)

John M. claims the totality of the circumstances does not show "that he understood the consequences of abandoning his right to a jury trial." He focuses on his question about whether he would get a jury trial if he were to "lose" at a bench trial, to which his trial counsel responded that he could "do a writ later." According to John M., the lack of any ensuing explanation of what a writ was or express clarification that he would not get a jury trial if he was unsatisfied with the result of the bench trial, combined with other statements he made showing general "confusion," means the record does not affirmatively demonstrate that his waiver was knowing.

We conclude there was substantial evidence that John M. understood the consequences of his jury waiver. Although his trial counsel could have more clearly answered the question at issue, counsel's response can reasonably be interpreted as an implicit "no," conveying that if John M. did not prevail he would not get a jury trial but would have an appellate remedy. John M. did not ask any follow-up questions, and he unambiguously waived a jury trial when the trial court confirmed he wished to do so. Unsurprisingly in light of his psychiatric diagnosis, some of John M.'s statements and testimony showed confusion about other topics, but he was quite coherent during the jury-waiver discussion. Moreover, after the court granted the conservatorship petition, it reiterated that John M. had the right to appeal,

5

and he gave no response suggesting he still thought the matter might proceed to a jury trial.

John M. also complains that while the trial court explained "the basic components of a jury trial," it did not "ask him if he had discussed this with [his] attorney, had any questions, or fully understood [his] rights." He relies on *Sivongxxay*, in which our state Supreme Court identified such actions as examples of the "any number of ways" in which a court might "ensure, on the record, that [a party] comprehends what the jury trial right entails." (*People v. Sivongxxay*, *supra*, 3 Cal.5th at pp. 169–170.) But *Sivongxxay* specifically disclaimed any intent "to limit trial courts to a narrow or rigid colloquy" (*id.* at p. 170), and John M. cites no other authority requiring courts to confirm that a person entering a jury waiver has consulted with counsel or to do anything else beyond what the court did here to ensure a valid waiver. In short, we conclude that under the totality of the circumstances, the record adequately establishes that John M.'s jury waiver was knowing and voluntary.

### III.
#### DISPOSITION

The September 4, 2025 conservatorship order is affirmed.

6

 

 

_____

Humes, P. J.

WE CONCUR:

_____

Banke, J.

_____

Smiley, J.

*Conservatorship of John M.*  A174524